IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:14-CR-083 |
| v. | INFORMATION |
| CARMEN HOCKING, | 18 U.S.C. § 1343 |
| Defendant. | |

**THE UNITED STATES ATTORNEY CHARGES:**

**COUNT 1**
**(Wire Fraud Affecting a Financial Institution)**

CARMEN HOCKING, Defendant herein, as follows:

INTRODUCTORY ALLEGATIONS

1.  At all relevant times:

    a.  Defendant, CARMEN HOCKING, was a real estate agent and Realtor.

    b.  Loans approved by WestStar Mortgage, Inc. were funded by National City Bank.

    c.  National City Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation, a United States government agency.

THE SCHEME TO DEFRAUD

2.  From at least September 30, 2007, until on or about November 9, 2007, in the Southern District of Iowa, Defendant CARMEN HOCKING did devise, intend to devise, participate in, and execute a material scheme and plan to defraud WestStar Mortgage, Inc. and National City Bank, and to obtain money from them by means of materially false and fraudulent pretenses, representations, and promises.

MANNER AND MEANS

3.     To further the scheme and plan to defraud, Defendant CARMEN HOCKING did the following:

   a.     Defendant CARMEN HOCKING served as the real estate agent for a buyer (J.B.) in the purchase of property in Waukee, Iowa (Waukee property). Defendant CARMEN HOCKING was aware that J.B. had insufficient assets to make an earnest money payment and to qualify for a loan to purchase the Waukee property.

   b.     Despite being a real estate agent in the transaction, Defendant CARMEN HOCKING told J.B. that Defendant CARMEN HOCKING would provide money for J.B. to make the earnest money payment and to list as an asset on J.B.'s loan application so that J.B. would qualify for a loan to purchase the Waukee property.

   c.     On September 30, 2007, Defendant CARMEN HOCKING submitted an offer for J.B. to purchase the Waukee property, which included a provision for J.B. to make a $500 earnest money payment upon acceptance of the offer. The offer to purchase was accepted on October 9, 2007.

   d.     On October 11, 2007, Defendant CARMEN HOCKING wrote a check for $500 to a friend of J.B. (V.S.) to use to pay the earnest money payment. In turn, V.S. deposited the $500 check from Defendant CARMEN HOCKING into V.S.'s bank account, then wrote another check from V.S.'s bank account to pay the $500 earnest money payment for J.B. This payment was structured to conceal the fact that the $500 came from and was to be repaid to Defendant CARMEN HOCKING.

   e.     To purchase the Waukee property, J.B. applied for a Federal Housing Administration (FHA) loan from WestStar Mortgage, Inc.

   f.     As part of WestStar Mortgage, Inc.'s underwriting process, J.B. was

required to provide a gift letter from V.S. showing the $500 earnest money payment was a gift to J.B., as well as a copy of the cancelled check V.S. used to make the $500 earnest money payment.

      g.      In order to satisfy that condition imposed by a WestStar Mortgage, Inc. underwriter, Defendant CARMEN HOCKING caused to be prepared a letter signed by V.S. and J.B. that contained false statements that V.S. had given a $500 gift to J.B. This signed false letter was submitted as part of the loan application materials.

      h.      On November 7, 2007, Defendant CARMEN HOCKING provided $4,000 in United States currency to J.B. to be listed as an asset in J.B.'s loan application to purchase the Waukee property. In turn, the United States currency was deposited into the bank account of a member of J.B.'s family (D.B.), D.B. then wrote a $4,000 check to J.B. and J.B. deposited the $4,000 check into J.B.'s bank account. This payment was structured to conceal the fact that the $4,000 came from and was to be repaid to Defendant CARMEN HOCKING.

      i.      As part of WestStar Mortgage, Inc.'s underwriting process, J.B. was required to provide a gift letter from D.B. showing the $4,000 was a gift, as well as a copy of the cancelled check from D.B. to J.B.

      j.      In order to satisfy that condition imposed by a WestStar Mortgage, Inc. underwriter, Defendant CARMEN HOCKING caused to be prepared a letter signed by D.B. and J.B. that falsely stated that D.B. had given J.B. a gift of $4,000. This signed false letter was submitted as part of the loan application materials.

      k.      Defendant CARMEN HOCKING caused a loan application to be prepared by J.B. that falsely stated that J.B. had made the $500 earnest money payment and that J.B.'s assets included $4,000 in J.B.'s bank account. This signed false loan application was

submitted as part of the loan application materials.

l.    Defendant CARMEN HOCKING knew each of these representations was false and that the lender would rely upon the false representations. Defendant CARMEN HOCKING intended for the materially false representations to cause the lender to provide J.B. with loan proceeds, for which J.B. would not have otherwise qualified, to purchase the Waukee property.

m.    It was reasonably foreseeable to Defendant CARMEN HOCKING that the scheme and plan to defraud would involve and result in the use of interstate wires to transmit documents in the loan application process, and the use of interstate wires to transmit loan proceeds.

n.    As a result of the materially false representations, on November 9, 2007, J.B. obtained a $162,943 FHA loan from WestStar Mortgage, Inc. for the purchase of the Waukee property. The loan was funded by National City Bank.

o.    The scheme and plan to defraud affected a financial institution, in that the scheme and plan to defraud involved an increased risk of loss to National City Bank.

p.    J.B.'s loan subsequently went into default, the property was subsequently foreclosed upon, and FHA suffered a loss of approximately $65,000.

## WIRE

4.    On or about November 9, 2007, as a result of the aforementioned scheme and plan to defraud, the loan proceeds for J.B.'s loan were transmitted by means of wire in interstate and foreign commerce, that is, from Louisville, Kentucky to Des Moines, Iowa.

This is a violation of Title 18, United States Code, Section 1343.

## THE UNITED STATES ATTORNEY FURTHER CHARGES:

### COUNT 2
### (Wire Fraud Affecting a Financial Institution)

CARMEN HOCKING, Defendant herein, as follows:

### INTRODUCTION

1.  At all relevant times:

    a.  A person with the initials M.F. worked for National City Mortgage in Stockton, California.

    b.  National City Mortgage was a division of National City Bank.

    c.  Loans approved by National City Mortgage were funded by National City Bank.

    d.  National City Bank was a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation, a United States government agency.

    e.  National City Bank was acquired by PNC Financial Services in 2008.

### THE SCHEME TO DEFRAUD

2.  Between on or about December 5, 2006 and December 27, 2006, in the State and Eastern District of California and elsewhere, Defendant CARMEN HOCKING did devise, intend to devise, participate in, and execute a material scheme and plan to defraud National City Bank, and to obtain money from it by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

3.  To further the scheme and plan to defraud, Defendant CARMEN HOCKING did the following:

    a.  Defendant CARMEN HOCKING, who was a real estate agent and had an

ownership interest in multiple pieces of property, including a multi-family, four-plex residence at 128 S. Cardinal Avenue, Stockton, California (hereinafter the "Cardinal four-plex"), agreed to sell the Cardinal four-plex for $700,000 to a person with the initials R.M..

b. In order to buy the Cardinal four-plex, R.M. applied for a loan with National City Mortgage on or about December 5, 2006.

c. M.F. handled the loan for National City Mortgage and arranged for R.M. to obtain what was referred to as a "no-doc," interest only loan in the amount of $560,000.

d. Defendant CARMEN HOCKING and M.F. falsely represented in R.M's loan application that the Cardinal four-plex that he was purchasing was to be his primary residence. A loan for a primary residence typically had a lower interest rate than a loan for a property the owner would not occupy.

e. Defendant CARMEN HOCKING and M.F. also falsely represented in R.M's loan application that R.M. would supply approximately $148,000 to $165,000 toward the purchase of the property.

f. As part of the underwriting process, R.M. was required to provide an explanation as to his motive for moving from a single-family residence to a multi-family four-plex.

g. In order to satisfy that condition imposed by a National City Mortgage underwriter, defendant CARMEN HOCKING and M.F. prepared, caused to be prepared, and provided to R.M. to sign a letter dated December 7, 2006 which contained false statements as to R.M.'s motives to move into the multi-family Cardinal four-plex. This signed false letter was submitted as part of the loan application materials.

h. Under National City Mortgage's underwriting guidelines, a no-doc, interest only loan did not require a borrower to report his income or his assets on his loan application. One could qualify for a no-doc, interest only loan if he had a sufficiently high credit score and made a down payment of 20 percent towards the purchase of the property.

i. Despite the fact that she was the seller of the property, defendant CARMEN HOCKING told R.M., who did not have enough money to make the down payment, that she would furnish the money needed for the down payment . Defendant HOCKING directed R.M to sign a note dated December 15, 2006 memorializing his obligation to repay her $142,000.

j. Defendant CARMEN HOCKING and M.F. agreed that M.F. would make an illusory down payment for R.M. They agreed that M.F. would be repaid from escrow from the proceeds of the loan.

k. M.F. caused to be issued and placed into R.M.'s escrow account a cashier's check dated on or about December 26, 2006 in the amount of $141,721 to serve as the down payment for R.M.'s purchase of the Cardinal four-plex.

l. At the close of escrow for R.M.'s purchase of the Cardinal four-plex, $102,000 was wired from escrow to P.S.'s credit union account on or about December 27, 2006. The payment was characterized on the title records as a "payoff demand" to P.S.

m. Another wire, this one in the amount of $40,000, was issued to a bank for the benefit of a person with the initials K.C. This payment was also characterized on the title records as a "payoff demand" to P.S.

n. P.S. was then the wife of M.F.

o. These two payments out of escrow were to repay M.F for the illusory down payment that he made for R.M..

p. As a result of Defendant CARMEN HOCKING's actions, no actual down payment was made in the R.M. loan transaction as required by the underwriting rules. Defendant CARMEN HOCKING and M.F. arranged for R.M. to obtain a "no-doc," interest only $560,000 loan from National City Mortgage despite the fact that neither R.M. nor anyone else made an actual down payment for the purchase.

q. R.M.'s loan subsequently went into default, the property was subsequently foreclosed upon, and National City Bank suffered a loss of approximately $450,000.

WIRE

4. On or about December 26, 2006, in the State and Eastern District of California, for the purpose of executing and attempting to execute the aforementioned scheme and plan to defraud, Defendant CARMEN HOCKING did knowingly cause to be transmitted by means of wire in interstate and foreign commerce, that is, from Des Moines, Iowa to Stockton, California, a fax cover sheet and document dated December 20, 2006 and entitled Demand for Payment in which Defendant CARMEN HOCKING requested that $142,000 of her proceeds from the sale of the Cardinal four-plex be remitted to the person with the initials P.S.

This is a violation of Title 18, United States Code, Section 1343.

Nicholas A. Klinefeldt
United States Attorney

By: *Kelly Mahoney*
Kelly Mahoney
Assistant United States Attorney